<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILLIAM MILKO,<br><br>              Plaintiff,<br><br>          v.<br><br>INTERNATIONAL FLAVORS &<br>FRAGRANCES, INC., et al.,<br><br>              Defendants. | Civil Action No. 15-8291 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

      This matter comes before the Court on Plaintiff William Milko's ("Plaintiff" or "Mr. Milko") motion to remand and amend the Complaint. (ECF No. 6.) Defendant International Flavors and Fragrances, Inc. ("Defendant" or "IFF") filed opposition (ECF No. 13), and Plaintiff replied (ECF No. 14). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiff's motion to remand and amend the Complaint is denied.

**I.**    <u>**Background**</u>

      IFF is a major world-wide producer of fragrances, headquartered in New York. (Notice of Removal, Ex. A ("Compl.") ¶ 2, ECF No. 1-1.) Mr. Milko worked at IFF's facility in Hazlet, New Jersey, for more than twenty-eight years. (*Id.* ¶ 1.) On June 25, 2013, while working as a process operator at the Hazlet facility, Mr. Milko injured his left hand and elbow. (*Id.* ¶ 9.) IFF subsequently placed Mr. Milko on "light duty" for six weeks, and he filed a worker's compensation claim. (*Id.* ¶¶ 10, 36, 37.) When Mr. Milko returned to his regular duty job as a process operator,

he reinjured his elbow and was placed back on "light duty." (*Id.* ¶¶ 10-12.) On October 16, 2013, IFF sent Mr. Milko for a functional capacity evaluation (the "FCE"). (*Id.* ¶ 15.) The results of the FCE authorized Mr. Milko to return to his regular job as a process operator with a maximum work capacity of "medium" as a reasonable accommodation. (*Id.* ¶¶ 16-18.) On October 29, 2013, a few days after Mr. Milko completed the FCE, IFF terminated Mr. Milko's employment. (*Id.* ¶ 19.)

On October 16, 2015, Mr. Milko filed the Complaint in the New Jersey Superior Court, Middlesex County against IFF for disability discrimination under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12, and for workers' compensation retaliation pursuant to N.J.S.A. 34:15-39.1 of the New Jersey Workmen's Compensation Act (the "NJWCA"). (Notice of Removal ¶ 1, ECF No. 1.) On November 24, 2015, IFF removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1441(a), 1332(a), and 1446. (*Id.* at 2.) Now, Mr. Milko moves to remand the case to state court pursuant to 28 U.S.C. § 1445(c), and to amend the Complaint to add non-diverse John Doe defendants pursuant to Rule 15(a)(1).

## II.   **Motion to Remand**

### A.   **Legal Standard**

A motion to remand is governed by 28 U.S.C. § 1447(c), which provides that removed cases shall be remanded, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). In this Circuit, removal statutes are strictly construed, and remand is favored when doubt exists as to the propriety of removal. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). The general removal statute permits a defendant in a state court action to remove the suit to federal district court if federal subject matter jurisdiction existed when the complaint was initially filed. *See* 28 U.S.C. § 1441(a). The burden of establishing that there is federal subject matter jurisdiction is borne by the removing party.

*Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). When presented with an argument for remand, the removing defendant must shoulder the burden of establishing the validity of removal and the existence of federal jurisdiction. *Id.*

### B.    Analysis

Plaintiff argues that the case was improperly removed because Plaintiff's retaliatory discharge claim is an action arising under the worker's compensation laws of the State of New Jersey, and § 1445(c) prohibits the removal of cases arising under a state's worker's compensation laws. (Pl.'s Moving Br. 6, ECF No. 6-1). In opposition, IFF argues that Plaintiff's retaliation claim does not arise under the NJWCA because the claim "was created by New Jersey case law, seeks tort-type remedies, and is established by proof of fault." (Def.'s Opp'n Br. 12, ECF No. 13.)

Section 1445(c) states that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C § 1445(c). The phrase "arising under" has been consistently interpreted "to have the same meaning in section 1445(c) as in section 1331" of Title 28 of the United States Code, "which governs federal question jurisdiction." *Reed v. Heil Co.*, 206 F.3d 1055, 1059 (11th Cir. 2000); *see also Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 202 (6th Cir. 2004) ("we are guided by the fact that Congress invoked the identical 'arising under' language when it enacted the federal question jurisdiction statute."); *Ingram v. DESA*, No. 08-1326, 2008 WL 2246428, at *2 (E.D. Pa. May 30, 2008) ("Courts have interpreted the phrase 'arising under' in § 1445(c) in the same manner as the identical phrase in the federal question statute."). Under § 1331, a case "arises under" federal law when (1) the federal law creates the cause of action or (2) relief depends on the determination of a substantial question of federal law. *Harper*, 392 F.3d at 202-03 (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-

28 (1983). Accordingly, "a civil action 'arises under' a state's workmen's compensation laws within the meaning of § 1445(c) if the success of the plaintiff's cause of action depends upon a particular interpretation of the workers' compensation laws, or where the state's workers' compensation laws create the plaintiff's cause of action." *Ingram*, 2008 WL 2246428, at *2 (citing *Harper*, 392 F.3d at 203).

Here, it is undisputed that Plaintiff's retaliatory discharge claim does not implicate a substantial question of worker's compensation law. Rather, the parties dispute whether the NJWCA creates Plaintiff's cause of action. More specifically, the parties' dispute may be boiled down to a disagreement as to the proper interpretation of the New Jersey Supreme Court's decision in *Lally v. Copygraphics*, 85 N.J. 668 (1981).

Like Mr. Milko, the plaintiff in *Lally* filed a retaliatory discharge claim in state court following termination after attempting to obtain worker's compensation benefits for work-related minor injuries. *Lally v. Copygraphics*, 173 N.J. Super. 162, 165 (App. Div. 1980). Section 34:15-39.1 of the NJWCA provides that:

> [i]t shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer, or because he has testified, or is about to testify, in any proceeding under the chapter to which this act is a supplement. For any violation of this act, the employer or agent shall be punished by a fine of not less than $100.00 nor more than $1,000.00 or imprisonment for not more than 60 days or both. Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination . . . .

N.J.S.A. 34:15-39.1. Pursuant to N.J.S.A. 34:15-39.1, the state trial court in *Lally* concluded "that exclusive jurisdiction to deal with plaintiff's grievance . . . resided in the Director of the Division

of Workers' Compensation, Department of Labor and Industry." *Id.* at 167. Accordingly, the state court ordered the transfer of plaintiff's complaint to the Division of Workers' Compensation for lack of jurisdiction. *Id.* Thereafter, however, the Commissioner of Labor sent correspondence to plaintiff advising her that he had decided not to impose the penalty permitted under N.J.S.A. 35:15-39.2, but that this decision did not relate "to any other proceeding that [plaintiff] deem[s] appropriate under N.J.S.A. 34:15-39.1." *Id.* at 168. Furthermore, in response to plaintiff's request for clarification of this position, the Commissioner advised plaintiff that only a court could provide the remedies such as back pay and job restoration that are provided under N.J.S.A. 34:15-39.1. *Id.* at 169. Given these conflicting interpretations of N.J.S.A. 34:15-39.1, which left plaintiff without recourse for her retaliatory discharge claim, she appealed. *Id.*

The Appellate Division affirmed the Commissioner's decision and reversed and remanded the trial court's transfer order, holding that "[t]he effect of the retaliatory discrimination act is to provide three separate alternative and nonexclusive routes" for relief from a retaliatory discharge claim: (1) administrative relief before the Commissioner of Labor; (2) quasi-criminal sanctions for a disorderly persons offense before a court of limited criminal jurisdiction; and (3) compensatory relief in a quasi-judicial proceeding before the Commissioner of Labor. *Id.* at 178. In addition, to this relief the Appellate Division also recognized a judicially cognizable cause of action for compensatory and punitive damages that "is not preempted by primary or exclusive agency jurisdiction or by any other provision of the statutory complex." *Id.* at 169. On appeal, the New Jersey Supreme Court affirmed and endorsed the Appellate Division's determination "that there exists a common law cause of action for civil redress for a retaliatory firing that is specifically declared unlawful under N.J.S.A. 34:15-39.1 and 39.2." *Lally*, 85 N.J. at 670.

Citing *Lally*, IFF argues that Plaintiff's retaliatory discharge claim does not arise under the NJWCA because the *Lally* court recognized a cause of action, which "originated in common law as a tort claim," and for which compensatory and punitive damages are "recoverable only by filing a private common law cause of action for retaliatory discharge." (Def.'s Opp'n Br. 12-13.) Plaintiff does not dispute that the *Lally* court recognized a common law cause of action for a retaliatory discharge. Nevertheless, relying in part on Justice Schreiber's discussion in the *Lally* dissent, Plaintiff argues that this cause of action "arises under" the NJWCA, within the meaning of § 1445(c), because:

> the public policy enunciated in section 39.1 did not exist before enactment of the statute . . . [and] no decision in New Jersey or elsewhere before enactment of section 39.1 in 1966 . . recognized a common law cause of action arising out of a discharge because of reprisal for filing a workers' compensation claim. . . .[Thus] [t]he cause of action here was created by the statute . . . .

(Pl.'s Reply Br. 8, ECF No. 14) (quoting *Lally*, 85 N.J. at 675 (Schreiber, J., dissenting)). Having considered both parties' positions, the Court finds Defendant's more persuasive.

The Third Circuit has not addressed the issue of whether a claim of retaliatory discharge based on filing a worker's compensation claim "arises under" the NJWCA, within the meaning of § 1445(c). Plaintiff, however, relies on case law from other circuits to argue that his claims for compensatory and punitive damages for violations of N.J.S.A. 34:15-39 "arises under" the NJWCA. (*Id.* at 9-15.) As an initial matter, these cases are not binding on this Court. Moreover, these cases are inapposite because the state worker's compensation statutes at issue in those cases are distinguishable from the NJWCA.

Section 34:15-39.1 makes "[i]t . . . unlawful for any employer . . . to discharge . . . an employee as to his employment because such employee has claimed . . . workmen's compensation benefits from such employer" and provides that "[a]ny employee so discriminated against shall be

6

restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination." N.J.S.A. 34:15-39.1.    It does not state that a terminated employee may bring a civil action to recover this relief. *Id.*   As Plaintiff acknowledged, the Appellate Division "concluded that the legislature intended by this language to create an administrative proceeding in which employees could seek compensatory relief, *rather* than a judicially cognizable tort action limited to recovery of lost wages and reinstatement." (Pl.'s Moving Br. 5-8; Pl.'s Reply Br. 6 (emphasis added).)   Thus, the NJWCA does not provide that an employee may bring a retaliatory discharge claim to recover compensatory and punitive damages.

In contrast, Plaintiff relies on *Wilson v. Lowe's Home Center Inc.*, 401 F. Supp. 2d 186 (D. Conn. 2005), where the Connecticut Workers' Compensation statute at issue explicitly provided that an employee who is discharged for filing a worker's compensation claim:

> may . . . [b]ring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court.

Conn. Gen. Stat. Ann. § 31-290a. Likewise, Plaintiff relies on *Humphrey v. Sequentia*, 58 F.3d 1238 (8th Cir. 1995), but in contrast to NJWCA, the Missouri retaliatory discharge statute at issue in *Humphrey* provided that "[a]ny employee who has been discharged or discriminated against shall have a civil action for damages against his employer." *See* Mo. Ann. Stat. § 287.780. Similarly, Plaintiff relies on *Suder v. Blue Circle Inc.*, 116 F.3d 1351 (10th Cir. 1997), but in contrast to the limited relief of job restoration and back pay that is described in 34:15-39.1 of the NJWCA, the Oklahoma retaliatory discharge statute at issue in *Suder* described broad

7

compensatory and punitive damages that are consistent with the damages available in a civil cause of action. *See* 85 Okl. St. Ann. § 5. In particular, the Oklahoma statute provides that an employer who violates the provision, "shall be liable for reasonable damages, actual and punitive damages if applicable, suffered by an employee as a result of the violation. . . . Exemplary or punitive damage awards made pursuant to this section shall not exceed One Hundred Thousand Dollars ($100,000.00)." *Id.*   Thus, given that the state worker's compensation statutes in *Wilson*, *Humphries*, and *Suder* are distinguishable from the NJWCA, those cases are not persuasive authority here. *See also Reed v. Heil Co.*, 206 F.3d 1055, 1059 (11th Cir. 2000) (noting that claim for workmen's compensation benefits and retaliatory discharge claim are not independent claims under Alabama's workmen's compensation statute, so settlement of the workmen's compensation claim would bar the retaliatory discharge claim).

In its opposition, Defendant relies on, inter alia, the decisions in *Spearman v. Exxon Coal USA Inc.*, 16 F.3d 722 (7th Cir. 1994), and *Harper v. Auto Alliance International, Inc.*, 392 F.3d 195 (6th Cir. 2009), to argue that Plaintiff's retaliatory discharge claim does not arise under the NJWCA. (Def.'s Opp'n Br. 14.)  Similar to the NJWCA, the Illinois and Michigan worker's compensation statutes at issue in those cases did not explicitly recognize a common law cause of action for a retaliatory discharge.  Therefore, the Court finds the decisions of the Sixth and Seventh Circuit Courts instructive.  In *Spearman*, the Seventh Circuit found that Plaintiff's retaliatory discharge claim did not "arise under" the Illinois worker's compensation statute. Like the NJWCA, the Illinois worker's compensation statute provided criminal and quasi-criminal remedies for a retaliatory discharge, but did not provide that an employee could bring a civil action to recover for a retaliatory discharge. *See* 48 Ill. Comp. Stat. ¶ 138 (1975) (cited in *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 356 (Ill. 1978).)   Notwithstanding the absence of a specific statutory provision

8

recognizing a civil cause of action for retaliatory discharge, however, the Supreme Court of Illinois recognized a common law cause of action for retaliatory discharge. *See Kelsay*, 384 N.E.2d at 356.

In *Spearman,* the plaintiff argued that a "claim of retaliation for the exercise of rights under the workers' compensation laws 'arises under' those laws even though the claim rests on general tort doctrines rather than the contents of the statutes." 16 F.3d at 723. The Seventh Circuit rejected plaintiff's argument. *Id.* at 726. Noting that the purpose of § 1445(c) was to prevent removals that would "nullify the 'expediti[ous] and inexpensive' procedures states had devised for workers' compensation claims," the Court held that plaintiff's retaliatory discharge claim did not "arise under" Illinois's worker's compensation laws. *Id.* at 724 -26. Quoting its decision in *Lingle*, the *Spearman* court stated:

> Our view that the tort of retaliatory discharge is not a worker's compensation law is supported by the fact that, as a matter of federal law, worker's compensation laws provide limited no-fault compensation for an injury; this limit on damages is in exchange for the elimination of general tort rules and defenses. The Illinois tort of retaliatory discharge lacks, for purposes of § 1445(c), the essential elements of a worker's compensation law.

*Id.* at 724 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031, 1039 n.9 (7th Cir. 1987) (en banc)). Likewise, in *Harper* the Sixth Circuit held that plaintiff's retaliatory discharge claim did not arise under Michigan's state worker's compensation statute. The Sixth Circuit, however, rejected the blanket rule suggested by the *Spearman* court that any claim that requires inquiry into fault does not "arise under" the state's worker's compensation statute. 392 F.3d at 208. The court instead stated that "the more logical course is to focus on whether the existence of the worker's compensation retaliation claim is necessarily dependent upon the administrative mechanisms and/or remedies of the applicable worker's compensation statute." *Id.* The Court finds these approaches persuasive. Applying either the *Spearman* or *Harper* court's analysis, the Court finds that Plaintiff's retaliatory discharge claim, which was not explicitly provided for in the

9

NJWCA, requires inquiry into fault, and does not depend on the administrative mechanisms or remedies of the NJWCA, and, as such, does not arise under the NJWCA within the meaning of § 1445(c).[1] *See also Ingram v. Desa*, No. 08-1326, 2008 WL 2246428, at *4 (E.D. Pa. May 30, 2008) (stating that claim for "pain and suffering, disfigurement, decreased earning potential, loss of comfort and humiliation" which are not compensable under the Pennsylvania worker's compensation law, did not "arise under" the Pennsylvania workers' compensation law).

Accordingly, this action was properly removed. Having found that this case was properly removed, the Court turns to Plaintiff's motion to amend the Complaint to join non-diverse John Doe defendants.

## III.   Motion to Amend

### A.   Legal Standard

Under Rule 15(a)(1)(A), a party may amend its pleading once as a matter of course within twenty-one days after serving it. Fed. R. Civ. P. 15 (a)(1)(A). However, "[i]f after removal [a] plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "Although the Third Circuit has never announced a standard to make such a determination, it has . . . endorsed the factors set forth by the Fifth Circuit in *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)." *Confessore v. AGCO Corp.*, No. 4-7262, 2015 WL

---

[1] Plaintiff also notes that some courts in other circuits have found that a retaliatory discharge claim may "arise under" the state's workmen's compensation laws even where the state worker's compensation statute does not provide for the specific remedy being sought. (Pl.'s Reply 10-14.) The Court does not find the expansive reading of § 1445(c) embraced by those courts persuasive, and accordingly, does not construe § 1445(c) to apply to claims that are not related to the NJWCA's administrative scheme and seek remedies not provided by the NJWCA. *See, e.g., Bearden v. PNS Store, Inc.*, 894 F. Supp. 1418, 1422 (D. Nev. 1995) (holding that because the right to be free from retaliatory discharge is created by the state's worker's compensation statute, a common law cause of action to enforce that right "arises under" the worker's compensation statute).

4430472, at *4 (D.N.J. July 20, 2015) (citing *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835 (3d Cir. 2014) ("While we have not yet addressed the appropriate analytical approach to § 1447(e) (and need not do so here), the Fifth Circuit has instructed that when a district court is 'faced with an amended pleading naming a new nondiverse defendant in a removed case, [it] should scrutinize that amendment more closely than an ordinary amendment . . .'")). In particular, the Fifth Circuit declared that courts should consider: "[(1)]the extent to which the purpose of the amendment is to defeat federal jurisdiction; [(2)] whether plaintiff has been dilatory in asking for amendment; [(3)] whether plaintiff will be significantly injured if amendment is not allowed; and [(4)] any other factors bearing on the equities." *Hensgens*, 833 F.2d at 1182. These factors are referred to as the "*Hensgens* factors."

### B.     Analysis

Plaintiff argues that he is entitled to amend the Complaint to identify defendants that were initially listed as John Doe defendants in the Complaint "as a matter of course" because the twenty-one days to amend pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure has not run out and "Defendant has not yet filed a responsive pleading." (Pl.'s Moving Br. 2.) In its opposition, Defendant argues that Plaintiff's motion to amend the Complaint to identify John Doe defendants should be denied as futile because Plaintiff's NJLAD claims are now time-barred by the two-year statute of limitations and Plaintiff's attempted amendment does not relate back to the original filing. (Def.'s Opp'n Br. 4-5.)  Notwithstanding the merits of Defendant's argument, "th[e] Court has no discretion to deny leave to amend on the grounds of futility where, as here, the Plaintiff filed an Amended Complaint as a matter of course . . ." pursuant to Rule 15(a)(1).  *Houser v. Pa. Dep't of Corr.*, No. 13-1068, 2014 WL 640261, at *2 (W.D. Pa. Feb. 19, 2014); *Broyles v. Corr. Med. Servs., Inc.*, No. 08-1639, 2009 WL 3154241, at *4 (6th Cir. 2009) (finding that it was an

abuse of district to reject amended complaint on the grounds of futility where it was filed as a matter of course); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F. 3d 1281, 1292 (11th Cir. 2007) (stating that "district court lacked discretion" to reject amended complaint that was filed as a matter of course on the basis of futility).

Defendant argues in the alternative that if the Court finds that Plaintiff's claims are not time-barred, the motion to amend should nonetheless be denied pursuant to pursuant to 28 U.S.C. § 1447(e) because "all the *Hensgens* factors call for the denial of Plaintiff's motion to amend the [C]omplaint." (Def.'s Opp'n Br. 7.)   For the reasons discussed below, the Court agrees with Defendant.

### 1.    Purpose of Amendment

"The first *Hensgens* factor is an examination of the extent to which defeating Defendant's choice in the federal forum was the purpose of Plaintiff's decision to add the non-diverse party, *i.e.* plaintiff's motive." *City of Perth Amboy*, 539 F. Supp. 2d at 746.  It "focuses on whether the purpose of the amendment is to defeat federal jurisdiction, or, in the alternative, whether the plaintiff has '*legitimate reasons for the amendment*.'" *Midthassel v. Aramark Corp.*, No. 09-5515, 2010 WL 2521977, at *5 (D.N.J. June 15, 2010) (emphasis added).   IFF argues that Plaintiff's purpose in amending the Complaint is solely to defeat diversity because (1) "Plaintiff has proffered nearly nothing to demonstrate why he suddenly was able to identify" the defendants, and (2) "Plaintiff's counsel certified in the Case Information Statement filed with the original Complaint that Plaintiff did not anticipate adding any parties." (Def.'s Opp'n Br. 8-10.) Based on its consideration of the parties' submissions, the Court agrees.

Courts have found that when a plaintiff provides a legitimate reason for amendment such as defendants' actions in enlarging the case or new facts uncovered during discovery, the first

*Hensgens* factor will weigh in favor of permitting amendment. *City of Perth Amboy*, 539 F. Supp. 2d at 747; *cf.*, *Midthassel*, 2010 WL 2521977, at *5 (holding that the first *Hensgens* factor weighs against amendment in part because "Plaintiff proffer[ed] nothing . . . to demonstrate that new facts came to light between the filing of the initial Complaint and Plaintiff's motion to amend"); *see also Parson v. Home Depot USA, Inc.*, No. 13-4817, 2013 WL 6587316, at *3 (D.N.J. Dec. 13, 2013) ("In instances where a plaintiff knows of a defendant's activities but chooses not to include him, courts will deny the late attempt to join, viewing the late addition as "nothing more than an attempt to destroy diversity.") (citing *Salamone v. Carter's Retail, Inc.*, No. 09-5856, 2010 WL 762192, at *2 (D.N.J. Mar. 5, 2010)). Here, Plaintiff has not proffered any explanation for the delay in identifying defendants he now seeks to add. In his moving brief, Plaintiff states that he is "now able to specifically identify three" of the John Doe defendants, who are all managerial level employees of IFF.  It is unlikely that Plaintiff did not know the identities of these three managerial level employees that retaliated against him given that he has worked for IFF for twenty-eight years. Thus, the Court finds that the first *Hensgen* factor – the extent to which the purpose of amendment is to defeat federal jurisdiction – weighs against granting leave to amend.

## 2.    Plaintiff's Delay

With respect to the second *Hensgens* factor, the Court finds that the amendment was dilatory. "Dilatory conduct under the *Hensgens* analysis takes into consideration the length and nature of the delay." *Fields v. Zubkov*, No. 08-2016, 2008 WL 4447098, at *6 (D.N.J. Sept. 26, 2008). The passage of time alone is not sufficient to find that the amendment is dilatory, "however at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Midthassel*, 2010 WL 2521977, at *7 (quoting *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir.1984)). Other district

courts in this Circuit have held that waiting more than thirty days to file a motion to amend without giving a reason for delay is dilatory. *See e.g., Parson*, 2013 WL 6587316, at *3 (finding plaintiff dilatory where he moved to amend thirty days after the case was removed); *Salamone*, 2010 WL 762192, at *1 (finding plaintiff dilatory for waiting thirty-seven days after the case was removed to file an amended complaint). Here, the alleged discrimination occurred on October 29, 2013, but Plaintiff did not move to amend the Complaint to identify non-diverse individual defendants until December 8, 2015. While Plaintiff moved to amend fourteen days after the case was removed, Plaintiff did so nearly two months after filing the original Complaint and only after the case was removed to this Court in conjunction with his motion to remand. Given that Plaintiff has not provide any credible explanation for his inability to identify the John Doe defendants sooner, the Court finds that Plaintiff was dilatory in moving to amend. Accordingly, the second *Hensgens* factor also weighs against permitting the amendment.

### 3.      Prejudice to Plaintiff

Third, IFF argues that Plaintiff is not prejudiced by "prosecuting his discrimination and retaliation claims solely against IFF." (Def.'s Opp'n Br. 10.) The Court agrees with IFF that Plaintiff is not going to be significantly injured if the amendment is denied. "In determining prejudice to a plaintiff under the third *Hensgens* factor, courts consider whether a plaintiff can be afforded complete relief in the absence of the amendment." *Patton v. Nike, Inc.*, No. 14-631, 2015 WL 1546246, at *4 (E.D. Tex. Apr. 7, 2015) (quoting *Anzures v. Prologis Texas I LLC*, 886 F. Supp. 2d 555, 565 (W.D. Tex. 2012)). Here, Plaintiff does not argue that he would not be afforded complete relief should the amendment be denied. Thus, Plaintiff has failed to show that he would be significantly injured if the amendment is denied.

14

### 4.     Any Other Factors Bearing on the Equities

In its briefing on the fourth *Hensgens* factor, Defendant essentially repeats the arguments that it made for the first three factors. As these arguments have already been considered with respect to the first three factors, the Court shall not consider them with respect to the fourth factor. The Court finds, however, that Plaintiff's failure to offer any other equitable reasons for permitting amendment weighs against granting the motion to amend.

Having found that all *Hensgens* factors weigh against granting Plaintiff's motion to amend the Complaint to add non-diverse individual defendants, the Court denies Plaintiff's motion to amend.

## IV.    <u>Conclusion</u>

For the reasons set forth above, Plaintiff's motion to remand and amend the Complaint is denied. An order consistent with this Memorandum Opinion will be entered.

s/Michael A. Shipp_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

**Dated:** July <u>29</u>, 2016